BRIGGS *et al.* v. WASH-PUK-QUA *et al.*

*(Circuit Court, D. Kansas.* December 26, 1888.)

INDIANS—KICKAPOO INDIANS—RIGHTS OF HEIRS—CONVEYANCE OF LAND BEFORE PATENT—ESTOPPEL.

Act Cong. Aug. 4, 1886, § 2, (24 St. at Large, 219,) provides that on the death of an allottee of land under the treaty of June 28, 1862, with the Kickapoo Indians, leaving heirs, and without having obtained patents, the secretary of the interior shall cause patents in fee-simple to issue in the name of the original allottee, and that such original allottee shall be regarded as a citizen of the United States and of the state of Kansas; the land to become a part of his estate, to be administered or descend to his heirs, etc. *Held,* that the United States holds the legal title in fee-simple in trust for the heirs of the allottee, and the latter are estopped by their warranty deed conveying the land before obtaining a patent from asserting title against the grantee.

In Equity.

Bill by Lewis M. Briggs and others against Wash-puk-qua and Wah-ka, to quiet title to certain lands conveyed to complainants by defendants.

*Jackson & Royse,* for complainants.

*Waters, Chase & Tillotson,* for defendants.

FOSTER, J. This is a bill to quiet title to the following real estate: The N. W. ¼ of section 9, township 5, of range 17, and the S. E. ¼ of the N. E. ¼ of section 8 of the same township and range, situated in Atchison county. The first-named tract was allotted to Wash-ka-ta-mo-sha-wa, a Kickapoo Indian, under and by virtue of the treaty with the Kickapoo Indians of June 28, 1862. 13 St. at Large, 623. The last-named tract was allotted to Ke-ve-nes, also a Kickapoo Indian, under the same treaty. The right of an allottee under that treaty to obtain a patent and to alienate his land depended upon his showing by proceedings in the federal court that he was competent to manage his own property, and had severed his tribal relations, adopted the habits of civilized life, and in fact should become a citizen of the United States. Both of these allottees died some time prior to August, 1886, without having obtained patents to their lands, and without having taken any steps under the treaty of 1862 to procure the same. The defendant Wash-puk-qua was the wife of the first-named allottee, and the mother of the last-named, and was the only surviving heir. She afterwards married Wah-ka, who is made co-defendant in this case. On August 28, 1886, said Wash-puk-qua, as the heir of said allottees, and her husband and co-defendant, con-

veyed to complainants said above-described land by warranty deed, for the sum of $1,500, and the purchasers entered into possession, and made lasting and valuable improvements on said land of the value of $1,000. At the date of said conveyance no patent for said lands had been issued under the act of 1886. Under the second section of said act of August 4, 1886, (24 St. 219,) it was made the duty of the secretary of the interior to issue patents when the allottee under the treaty of 1862 had died, or should thereafter die, leaving heirs, and without having received a patent for his land. Said section reads as follows:

"That where allottees under the aforesaid treaty shall have died, or shall hereafter decease, leaving heirs surviving them, and without having obtained patents for lands allotted to them in accordance with the provisions of said treaty, the secretary of the interior shall cause patents in fee-simple to issue for the lands so allotted, in the names of the original allottees, and such allottees shall be regarded, for the purpose of a careful and just settlement of their estates, as citizens of the United States and of the state of Kansas; and it shall be competent for the proper courts to take charge of the settlement of their estates, under all the forms and in accordance with the laws of the state of Kansas, as in the case of other citizens deceased; and where there are children of allottees left orphans, guardians for such orphans may be appointed by the probate court of the county in which such orphans may reside, and such guardians shall give bond, to be approved by said court, for the proper care of the person and property of such orphans, as provided by law."

The patents were issued in this case some time later, and in January, 1888. The defendants now claim title to said land adverse to complainants, and aver that their deed to complainants in August, 1886, conveyed no title, and was void and of no effect, because at that time no patent had been issued by the government, and until such patent had been issued they could convey no title. It will be seen that the whole controversy rests on the construction and effect to be given to the second section of the act of August 4, 1886. It seems evident that it was the purpose of that act, on the death of the allottee having no patent for his land, and leaving heirs, that the title should, without other conditions, be perfected in the allottee and his heirs; and the land should become a part of his estate, to be administered or descend to the heirs, as the estate of any deceased citizen would under the laws of the state of Kansas. From and after the said act of 1886 became a law, the government held the legal title in trust, for the heirs of all such allottees then deceased. The right to the patent was absolute and complete, and the duty of the secretary of the interior to issue the patent was imperative. Mr. Justice FIELD, in *Stark* v. *Starrs*, 6 Wall. 418, says:

"The right to a patent once vested is treated by the government, when dealing with the public lands, as equivalent to a patent issued. When in fact the patent does issue, it relates back to the inception of the right of the patentee, so far as it may be necessary to cut off intervening claimants."

If the patent relates back to the inception of the right to it to cut off intervening claimants, with equal reason and justice it must relate back to estop the patentee from asserting title against his grantee under warranty deed made before the patent actually issued, and after his right to

it had become absolute.   In *Langdeau* v. *Hanes*, 21 Wall. 530, the court uses the following language:

"A legislative confirmation of a claim to land is a recognition of the validity of such claim, and operates as effectively as a grant or quitclaim from the government.   *   *   *   If the claim be to land with defined boundaries, or capable of identification, the legislative confirmation perfects the title to the particular tract, and a subsequent patent is only documentary evidence of that title."

The supreme court of Kansas has decided that a conveyance by the heir of a Pottawatomie Indian allottee, under a treaty similar to the Kickapoo treaty, and an act of congress for the settlement of their estates, August, 1868, was valid, although made before the patent was issued. And this decision was made on the act of 1868, which did not provide in terms, as does the act of 1886, that a patent should issue on the death of the allottee.   *Oliver* v. *Forbes*, 17 Kan. 124.   I can see nothing in the language or purpose of the act of 1886 to warrant the construction claimed for it by counsel for defendants, that the heir takes the land with the same restrictions and limitations on the right of disposing of it as existed against the allottee in his life-time.   The patent is absolute and unconditional,—a fee-simple.   The whole title of the goverment passes to the allottee and his heirs for all purposes, and without restriction. Counsel for plaintiffs has called my attention to several other cases, both in the federal and state courts, sustaining the views herein expressed, but it is not necessary to cite further authority.   The plaintiffs are entitled to their decree.